STATE OF NORTH CAROLINA v. ISAAC HENRY HUNT, JR.

No. COA95-1024

(Filed 17 September 1996)

**1. Arrest and Bail § 142 (NCI4th)— bond—new indictment— ex parte bond setting**

The trial court did not err by denying defendant's motion to dismiss charges of burglary, first-degree sexual offense, and assault based on the prosecutor's *ex parte* contact with the superior court judge where defendant was arrested and charged with first-degree burglary, first-degree sexual offense and misdemeanor assault on a female, he was released the same day on a $1,000 bond, the prosecutor submitted a bill of indictment for the charges but substituting assault with a deadly weapon inflicting serious injury for the misdemeanor assault charge, the grand jury issued indictments, the prosecutor approached the senior resi-

dent superior court judge to have bond set for the new felony charge, the bond was set at $30,000, and defendant was rearrested. At the time of the second arrest, defendant was not in custody and had not been released to answer the charges of assault with a deadly weapon inflicting serious injury. The $30,000 bond was a new bond for the new charge and there was no improper conduct when the prosecutor asked the judge to set bond for the new charge. Even so, there was no prejudice because, even though defendant argues that he was deprived of opportunities to gather evidence and search out witnesses, he had approximately three weeks after his initial release to gather evidence while it was still fresh in potential witnesses' minds.

**Am Jur 2d, Bail and Recognizance §§ 6, 7, 23 et seq., 42 et seq.**

2. **Evidence and Witnesses § 3004 (NCI4th)— prior conviction—motion in limine to prohibit cross-examination—no testimony from defendant—not preserved for appeal**

The issue of whether the trial court erred in a prosecution for burglary, first-degree sexual offense, and assault by denying defendant's motion in limine to prohibit the State from cross-examining him about a fourteen-year-old prior Florida conviction for involuntary sexual battery and burglary was not preserved for appellate review where defendant did not testify. He elicited testimony from one witness tending to show that he believed the incident was consensual and from another that it may have been mistaken identity. Without knowing which theory defendant would have pursued, the extent of prejudice or probative value could not be determined. Aspects of *Luce v. United States*, 469 U.S. 38, and its reasoning are adopted for application to cases under N.C.G.S. § 8C-1, Rule 609(b).

**Am Jur 2d, Witnesses §§ 916, 919, 924, 926, 927.**

Appeal by defendant from judgments and commitments entered 22 March 1995 by Judge Louis Meyer in Wake County Superior Court. Heard in the Court of Appeals 23 April 1996.

*Attorney General Michael F. Easley, by Special Deputy Attorney General William P. Hart, for the State.*

*Douglas W. Corkhill for defendant-appellant.*

STATE v. HUNT

[123 N.C. App. 762 (1996)]

LEWIS, Judge.

Defendant appeals his convictions for first degree burglary, first degree sexual offense and assault with a deadly weapon inflicting serious injury. We find no error.

On 22 September 1994, defendant was arrested and charged with first degree burglary, first degree sexual offense and misdemeanor assault on a female. Defendant was released on a $1,000.00 bond the same day.

After talking with the victim, the prosecutor submitted a bill of indictment to the Grand Jury containing the above-mentioned felonies and a third felony, assault with a deadly weapon inflicting serious injury, in place of the misdemeanor assault charge. The Grand Jury issued indictments on all three felonies. Thereafter, the prosecutor approached the senior resident superior court judge to have bond set for the new felony charge. The judge set bond at $30,000.00 and defendant was rearrested on 13 October 1994. Defendant was given the opportunity to have a bond hearing, but refused. He was released on bail and subsequently convicted of all three charges by a jury. Defendant was sentenced to life for the sexual offense, forty years for the burglary and three years for the assault.

At trial, the victim testified that sometime prior to the alleged incident, she had seen defendant in her next-door neighbor's driveway. Thereafter, the neighbor moved away and defendant came to victim's door on two occasions to inquire whether she knew where the neighbor had moved and asked her if she wanted to "smoke a joint." The victim testified that she began to think someone was stalking her around the same time.

On 21 September 1994, the victim was taking a shower when she heard someone at her window. After finding muddy footprints on her porch, she called the Wake County Sheriff's Department to file a prowler report. Later that evening, the victim heard neighborhood dogs barking and feared that the prowler was returning. She went outside to unhook a neighbor's dog and let her dog out. A neighbor called to say he had seen someone walking up and down her street and warned her to be careful. She then picked up a lead pipe and went to the door to let her dog back in. As she opened the door, she saw a man with a black ski mask and black shirt. He grabbed her and they began to struggle.

After the intruder overpowered the victim, he pinned her to the floor and began to make sexual advances toward her. She hit him over the head with the lead pipe, but he continued his advances, banging her head on the floor and inserting his fingers into her vagina. As a result of this confrontation, the victim's face, arms and feet were bleeding. She also had two black eyes and choke marks on her neck.

The victim testified that she feared for her life and began to talk with defendant and convince him that she wanted to have a "real relationship" with him. She persuaded him to take the ski mask off. She identified defendant as her attacker. After hiding the mask underneath the bag in a trash can, the victim agreed to go to a nearby bar with defendant. Instead, she escaped and drove to the Garner Police Station.

The victim denied that she had given her consent to any of the events which occurred that evening and stated that she had never gone on a date with defendant. She further testified that prior to the attack, defendant had walked up and down her street almost every evening at 10:00 p.m. and that one night she ran out and confronted him.

Patrick Hurley, a neighbor of the victim, testified that on 20 September 1994 around 9:30 p.m., he saw a white male walking up the street in dark clothes. He observed the same person the next evening at the same time and decided to call the victim to alert her because she was a single woman. Defendant is a white male.

Another neighbor of the victim, fourteen-year-old Jessica Parnell, testified that a few months before she was attacked, the victim expressed concern that someone was stalking her and was very frightened. Miss Parnell testified that she had seen a man walking up and down the street on several occasions and identified defendant at trial as that man.

Tim Hill, a former next-door neighbor and boyfriend of the victim, testified that she did not drink or frequent bars. He explained that their relationship ended because he was drinking and doing a lot of drugs and she did not approve. He also testified that he had worked with defendant and that defendant lived within walking distance of the victim's home.

Rose Beam, a deputy with the Wake County Sheriff's Department, testified that on 21 September 1994 she was called to the Garner

Police Station. Deputy Beam accompanied the victim to her house where they found blood on the floor and a torn shirt. However, they were not able to locate the mask in the trash can.

The defendant called Geraldine Morris who testified that she was a neighbor of the victim and had seen her on the sidewalk accusing a man of peeping in her windows. Ms. Morris stated that defendant was not the man the victim was speaking to on that occasion because defendant had a larger build and shorter hair.

Christopher Hawkins testified that he is an acquaintance of defendant. On 21 September 1994 around 9 p.m., he stated that he saw defendant at the Rock-Ola Cafe in Garner with a female. Mr. Hawkins identified the victim to be the female accompanying defendant that evening. He stated that she was wearing jeans and a black t-shirt.

Defendant did not testify.

On rebuttal, the State recalled the victim. She testified that she had never been to the Rock-Ola Cafe with defendant and had only been there one time a couple months prior to the trial with a man from her Bible study. She also testified that at the beginning of the trial, she saw defendant in the courtroom with a female who looked like her with the same height, build, complexion and hair color.

[1] Defendant first assigns error to the trial court's denial of his motion to dismiss prior to trial since the prosecutor had an impermissible ex parte contact with the superior court judge at the time he obtained the $30,000 bond. In his brief, defendant contends that the bond, set following the Grand Jury indictments, was a modification of an existing bond and therefore the second arrest order was improper under N.C. Gen. Stat. section 15A-305(b)(1). However, defendant has not assigned error to the arrest order and he has therefore abandoned the right to argue it on appeal. See N.C.R. App. P. 10(a) (1996).

Nonetheless, we have reviewed defendant's contentions and find them without merit. G.S. section 15A-305 provides:

An order for arrest may be issued when: A grand jury has returned a true bill of indictment against a defendant who is not in custody and who has not been released from custody pursuant to Article 26 of this Chapter, Bail, to answer to the charges in the bill of indictment.

G.S. § 15A-305(b)(1) (1988). At the time the second arrest order was issued, defendant was not in custody. Additionally, he had not been

released from custody to answer the charges in the bill that he had committed assault with a deadly weapon inflicting serious injury, the charge for which the new bond was set. We hold that the $30,000 bond was not a modification, but a new bond for the new felony charge. Therefore, the arrest order was not improper.

Defendant additionally alleges that it was improper for the prosecutor to approach the superior court judge to set the new bond without notifying his attorney. He argues that such conduct is unethical, was not cured by the offer of a bond hearing and requires a dismissal of the charges against him. We disagree. As stated above, the $30,000 bond was not a modification, but a bond set for the new felony indictment. There was no improper conduct on the part of the prosecutor when he asked the judge to set bond for this new charge.

Even if these actions were in violation of defendant's rights, we would certainly not dismiss the charges against him. "No case should be dismissed for the violation of a defendant's statutory rights unless, at the very least, these violations cause irreparable prejudice to the defendant's preparation of his case." *State v. Knoll*, 84 N.C. App. 228, 231, 352 S.E.2d 463, 465 (1987), *reversed on other grounds*, 322 N.C. 535, 369 S.E.2d 558 (1988).

Defendant argues that he was prejudiced because he was deprived of opportunities to gather crucial evidence and search out witnesses on his behalf. Defendant was first arrested on 22 September 1994 and was released after posting bond that same day. His second arrest occurred on 13 October 1994. He had approximately three weeks after his initial release from custody to gather evidence while it was fresh in potential witnesses' minds. Even if the actions of the prosecutor were improper, we hold that defendant has not made a sufficient showing of prejudice to warrant dismissal of the charges against him.

[2] Defendant also assigns error to the action of the trial court denying his motion in limine to prohibit the State from cross-examining him about a fourteen-year-old prior Florida conviction for involuntary sexual battery and burglary. He argues that this ruling violates N.C.R. Evid. 609(b) and had a chilling effect on his decision whether to testify.

At trial, the State conceded that the conviction was more than ten years old, so the only issue for our determination is whether the pro-

bative value of the conviction substantially outweighs its prejudicial effect. *See* N.C.R. Evid. 609(b) (1992).

In *Luce v. United States*, 469 U.S. 38, 83 L. Ed. 2d 443 (1984), the United States Supreme Court held that, in order "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." 469 U.S. at 43, 83 L. Ed. 2d at 448. The Court reasoned that, in order to accomplish the required task of weighing "the probative value of a prior conviction against the prejudicial effect to the defendant," a court "must know the precise nature of the defendant's testimony." *Id.* at 41, 83 L. Ed. 2d at 447. The Court logically concluded that this cannot be known when the defendant does not testify. *Id.*

The rule of evidence at issue in *Luce* is Federal Rule 609(a). Although other state courts have adopted the reasoning in *Luce* and applied it to cases arising under their versions of Rule 609(b), which are identical to our rule, *see Vaupel v. State*, 708 P.2d 1248, 1250 (Wyo. 1985); *see also Richardson v. State*, 832 S.W.2d 168, 172 (Tex. Ct. App. 1992), the applicability of *Luce* to our Rule 609(b) has not previously been determined by an appellate court of this State.

In *State v. Lamb*, 84 N.C. App. 569, 353 S.E.2d 857 (1987), *aff'd*, 321 N.C. 633, 365 S.E.2d 600 (1988), this Court considered *Luce*'s applicability to an appeal under N.C.R. Evid. 608(b). After granting the State's petition for discretionary review, the Supreme Court expressed no opinion on the *Luce* issue, *State v. Lamb*, 321 N.C. 633, 646, 365 S.E.2d 600, 607 (1988), and therefore left this Court's analysis intact.

In *Lamb*, this Court distinguished *Luce* "since no weighing of probative value and prejudicial effect was necessary." *Lamb*, 84 N.C. App. at 583, 353 S.E.2d at 865. The Court further distinguished *Luce* because the record indicated that the defendant intended to testify but for the ruling, *id.* at 581, 353 S.E.2d at 864, thereby disagreeing with *Luce*'s observation that the decision to testify "seldom turns on the resolution of one factor." *Luce*, 469 U.S. at 42, 83 L.E.2d at 448. The *Lamb* Court also made statements to the effect that requiring defendants to testify in order to preserve rulings on motions in limine was inadvisable since it would "render[] motions *in limine* ineffective." *Lamb*, 84 N.C. App. at 581, 353 S.E.2d at 864. However, these later statements are not necessary to the Court's decision and are therefore dicta. *See Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion

not necessary to the decision is *obiter dictum* and later decisions are not bound thereby.")

The present case is distinguishable from *Lamb*. The rule of evidence at issue, Rule 609(b), does require the weighing of probative value and prejudicial effect. Therefore, even if the record reveals defendant's intent to testify were it not for the ruling, his or her testimony is still necessary to enable our review of the required balancing test. We cannot determine whether error occurred under Rule 609(b) without it.

In *State v. Norris*, 101 N.C. App. 144, 398 S.E.2d 652 (1990), *disc. review denied*, 328 N.C. 335, 402 S.E.2d 843 (1991), while not directly applying *Luce* to Rule 609(b) cases, this Court intimated that certain concerns raised by *Luce* were important considerations when deciding such cases. *See Norris*, 101 N.C. App. at 148-49, 398 S.E.2d at 655. Since we find defendant's testimony to be central to our review of cases arising under North Carolina Rule 609(b), we now adopt aspects of the *Luce* decision and its reasoning for application to 609(b) cases.

N.C.R. Evid. 609(b) states:

Evidence of a conviction . . . is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

N.C.R. Evid. 609(b). This rule, like the one at issue in *Luce*, requires the court to conduct a balancing test. The only difference between the two tests is that while our rule requires the probative value to "substantially outweigh" the prejudicial effect, Federal Rule 609(a) merely requires the probative value to "outweigh" the prejudicial effect. *See* Fed. R. Evid. 609(a) (1987).

However, this distinction does not preclude our applying the *Luce* rule to cases arising under our Rule 609(b) and requiring defendants to testify in order to preserve such rulings for appeal. In fact, the distinction may actually make the need for defendants' testimony more compelling in cases arising out of Rule 609(b). In *Vaupel*, the Wyoming Supreme Court recognized this fact and reasoned that

because Rule 609(b) has the additional requirement that the probative value substantially outweigh the prejudicial effect, "[t]he factual circumstances of a case necessary to properly weigh the probative value against prejudicial effect are even more important under Rule 609(b) than Rule 609(a)." 708 P.2d at 1250. Therefore, the *Vaupel* Court ruled that "the policy considerations behind *Luce* are equally, if not more, applicable to Rule 609(b), and the potential problems even greater." We agree.

As recognized by the *Luce* Court, in order to adequately review the careful weighing of probative value and prejudicial effect necessitated by an evidentiary rule, an appellate court must consider the factual context of the entire trial. This includes the testimony of the defendant and would be incomplete without it. Additionally, in the absence of a defendant's testimony, any potential harm is purely speculative. The prosecution may decide not to use the conviction; or since a motion in limine is a "preliminary . . . decision which the trial court can change if circumstances develop which make it necessary," *State v. Lamb*, 321 N.C. 633, 649, 365 S.E.2d 600, 608 (1988), the trial court may decide to reverse its prior ruling. We hold that in order to preserve rulings made under North Carolina Rule of Evidence 609(b) for appeal, a defendant must testify.

In this case, defendant did not testify. We are left to speculate as to what the nature of his testimony would have been had he done so. Defendant elicited testimony from one witness tending to show that he believed the incident was consensual and from another that it may have been a case of mistaken identity. Without knowing which theory defendant would have pursued, we cannot determine the extent of the prejudice or probative value of defendant's prior conviction.

We hold that since defendant did not testify, he did not preserve this issue for our review and we therefore affirm the trial court's ruling.

No error.

Judges EAGLES and McGEE concur.