STATE OF NORTH CAROLINA v. JAMES BEN SMITH

No. COA01-1360

(Filed 31 December 2002)

## 1. Criminal Law— change of counsel—continuance—denied— no abuse of discretion

The trial court did not abuse its discretion or deny defendant his right to effective assistance of counsel by denying defendant's motion for a continuance twenty-one days after his second counsel was replaced (and a motion by the third to withdraw was denied) in a prosecution for robbery, assault, firearms offenses, and drug offenses.

**2. Criminal Law— defendant in jail uniform—not plain error**

There was no plain error where a trial began while defendant was still in his jail uniform. Defendant was given the opportunity to change into a suit during the morning break and he did not show that a different result would have been obtained if the jury had not seen him in prison attire.

**3. Evidence— convictions more than ten years old—absence of findings—harmless error**

The trial court in a prosecution for robbery, assault, firearms offenses, and drug offenses erred by permitting the State to cross-examine defendant about convictions more than ten years old without making findings of specific facts and circumstances to support a determination that the evidence was more probative than prejudicial. However, the error was harmless where defendant opened the door to impeachment of his character by testifying that he played major roles in law enforcement in the 1980s, and the evidence of the convictions was appropriate to rebut defendant's questionable character evidence that arose from events during the same time period.

**4. Criminal Law— admonishment by judge—defendant speaking directly to jury**

Defendant was not denied due process where he replied to the first question on direct examination by asking the jury whether they could hear him and the judge told defendant not to speak to the jury directly. The jury could not reasonably have inferred that the trial judge intimated an opinion about defendant's credibility.

**5. Assault— lesser included offenses—instructions**

The trial court did not err by not giving instructions on the lesser-included offenses of felony assault inflicting serious injury and misdemeanor assault inflicting serious injury in a prosecution for assault with a deadly weapon inflicting serious injury arising from an alleged pistol whipping.

**6. Drugs— fatal variance—identity of person to whom drugs sold**

There was a fatal variance between an indictment for sale of a controlled substance and the evidence where the indictment alleged the sale of marijuana to Berger; the evidence indicated that Berger's companion, Chadwell, went into the building to buy

**STATE v. SMITH**

[155 N.C. App. 500 (2002)]

the marijuana; and there was no testimony that defendant knew that Chadwell was acting on Berger's behalf. An indictment for the sale of a controlled substance must accurately name the person to whom defendant sold; however, the State is at liberty to obtain another bill of indictment.

**7. Firearms and Other Weapons— possession by felon—building not used as home**

The trial court did not err by refusing to dismiss a charge of possession of a firearm by a felon under the "home" exception; there was substantial evidence to a permit a reasonable juror to conclude that the premises did not constitute defendant's home.

**8. Sentencing— prior record level—sufficiency of evidence**

The trial court erred by sentencing based on a prior record level worksheet submitted by the district attorney without further documentation or stipulation by defendant.

Appeal by defendant from judgment dated 12 March 2001 by Judge Benjamin G. Alford in Superior Court, Lenoir County. Heard in the Court of Appeals 8 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Philip A. Lehman, for the State.*

*Adrian M. Lapas, for defendant-appellant.*

McGEE, Judge.

James Ben Smith (defendant) was arrested on 2 July 2000 and counsel was appointed to represent him on 3 July 2000. Defendant's counsel withdrew on 5 July 2000 due to an ethical conflict and James S. Perry (Perry) was appointed to represent defendant. Defendant was indicted on 11 December 2000 for armed robbery, assault with a deadly weapon inflicting serious injury, three counts of possession with intent to sell and deliver a controlled substance, sale of a controlled substance, keeping and maintaining a building for the use of controlled substances, and possession of a firearm by a convicted felon.

Perry appeared in court on 9 February 2001 and asked to withdraw as defendant's counsel because he believed defendant intended to file a malpractice action against him. Perry was allowed to withdraw and Nick Harvey (Harvey) was appointed to represent defend-

ant. Defendant's trial was continued to the 5 March 2001 session of superior court. Harvey and defendant appeared in court on 5 March 2001 and Harvey moved to continue the case and to withdraw as counsel. The trial court denied both motions.

The evidence presented at trial tended to show that Bill Berger (Berger) and Cheree Chadwell (Chadwell) visited defendant's unlicensed bar in Pink Hill, North Carolina on 2 July 2000 "to get some weed." Defendant's premises consisted of a cinder block building containing a couple of sofas, a big screen television, a bar, and two pool tables. The building did not contain a bedroom, bed, shower facilities, or any clothing belonging to defendant.

Berger waited in the car while Chadwell entered the building and asked if anyone had any "reefer." Defendant went into the bathroom and retrieved a bag of marijuana that he sold to Chadwell. After completing the transaction, Chadwell asked defendant if Berger could come inside and defendant said yes. Chadwell went to the door and allowed Berger to enter the premises.

A few minutes after Chadwell entered, Anna Higuera (Higuera), defendant's daughter, entered the building. When she saw Berger, Higuera told defendant that there might be trouble because of a previous confrontation between her and Berger. Higuera told defendant that Berger had threatened "to rip my face off" during an argument over a dog she had given Berger. Defendant approached Berger and asked him about his threats to Higuera. Berger made a snide retort to defendant and defendant backhanded him several times. Defendant picked up a pistol, pointed it at Berger, and hit him in the head with the barrel of the gun several times.

Defendant asked Berger if he had any money and he told Berger to put his cash on the pool table. Defendant told his daughter to take the amount of money that Berger owed her and she picked up thirty dollars. Defendant asked Berger if he would like to make a donation to the Society for the Prevention of Cruelty to Animals (SPCA). Berger replied that he would and he allowed defendant to decide the amount. Defendant removed a one hundred dollar bill from the pile of cash and wrote "SPCA" on the bill. Defendant hit Berger a few more times and ordered him to leave the premises.

Berger went to a friend's house and called the Lenoir County Sheriff's Department. Detective Jeffrey Herring (Herring) testified that he took Berger to a hospital emergency room for medical treatment after interviewing him. Berger suffered cuts to his nose and ears

and heavy bruises to his jaw, cheeks, and the back of his head. Herring obtained a search warrant for defendant's premises later that evening.

Herring and four other officers arrived at defendant's building around 11:15 p.m. to conduct a search of the premises. The officers knocked and identified themselves, did not receive an answer, and then forcefully entered the building. The officers found defendant and several other men lying on the floor. A bag containing 7.9 grams of marijuana was recovered in defendant's immediate proximity and a box containing bags of marijuana and a handgun was found on a couch in the same room. The officers removed keys and $1,051.00 in cash from defendant's pockets. They used the keys to open the women's bathroom, where they found a bag containing half a pound of marijuana, bags containing methamphetamine mixed with cocaine, syringes, rolling paper, handgun ammunition, and a box containing a bloodstained one hundred dollar bill. Captain Christopher Hill of the Lenoir County Sheriff's Department testified that there were no items of personal clothing, no bed, or other indication that the building was being used by someone as a home.

Defendant testified that his establishment was similar to a "hunt club" or "pool club." He acknowledged that he kept alcohol on the premises and that people at the establishment helped pay for it. Defendant testified that he became angry at Berger, backhanded him, pointed a pistol at him, and may have hit him with the pistol. He also testified that he took a one hundred dollar bill from Berger and that the blood found on the bill was the result of his beating Berger.

A jury found defendant guilty of robbery with a firearm, assault with a deadly weapon inflicting serious injury, possession of cocaine with intent to sell, possession of methamphetamine with intent to sell, possession of marijuana with intent to sell, selling marijuana, intentionally keeping or maintaining a building which is used for the purpose of unlawfully keeping or selling controlled substances, and possession of a handgun by a convicted felon. Defendant was sentenced to a minimum of 117 months and a maximum of 150 months in prison for robbery with a firearm, a minimum of 46 months and a maximum of 65 months in prison for assault with a deadly weapon inflicting serious injury, and a minimum of 20 months and a maximum of 24 months for possession of a firearm by a felon. Defendant also was sentenced to a total minimum of 14 months and a maximum of 17 months for possession of cocaine, methamphetamine, and marijuana with intent to sell and a total minimum of 14 months and a

maximum of 17 months for the sale of marijuana and maintenance of a place for unlawfully keeping or selling controlled substances. Defendant appeals.

**[1]** Defendant first argues the trial court abused its discretion and denied defendant's sixth amendment right to effective assistance of counsel under the United States Constitution when the trial court denied defendant's motion for a continuance. Defendant contends that twenty-one days was insufficient time for defendant's attorney to adequately prepare for trial.

> The right to the assistance of counsel and the right to face one's accusers and witnesses with other testimony are guaranteed by the Sixth Amendment to the Federal Constitution which is made applicable to the States by the Fourteenth Amendment, and by Article I, Sections 19 and 23 of the Constitution of North Carolina. The right to the assistance of counsel includes the right of counsel to confer with witnesses, to consult with the accused and to prepare his defense.

*State v. Cradle*, 281 N.C. 198, 208, 188 S.E.2d 296, 302-03, *cert. denied*, 409 U.S. 1047, 34 L. Ed. 2d 499 (1972).

> It is well-established that a motion to continue is ordinarily addressed to the trial judge's sound discretion and his ruling thereon will not be disturbed except upon a showing of abuse of discretion. However, when a motion to continue is based on a constitutional right, the question presented is a reviewable question of law.

*State v. Poole*, 305 N.C. 308, 318, 289 S.E.2d 335, 341-42 (1982) (citations omitted). The defendant must specifically demonstrate how his case would have been better prepared had the continuance been granted or show that he was materially prejudiced by the denial of the motion. *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986); *see Cradle*, 281 N.C. at 208, 188 S.E.2d at 303 (stating that a motion for continuance should be supported by an affidavit setting forth the grounds for a continuance).

Defendant cites *State v. Rodgers*, 352 N.C. 119, 529 S.E.2d 671 (2000), in support of his argument. In *Rodgers*, our Supreme Court granted the defendant a new trial because his newly appointed counsel received only thirty-four days to prepare for a bifurcated capital trial after withdrawal by previous counsel. *Id.* at 125, 529 S.E.2d at 675-76. The *Rodgers* case was particularly complex with multiple inci-

dents occurring over several days. *Id.* The Court found that the defendant's counsel had not interviewed witnesses, submitted a jury questionnaire for distribution, or responded to orders issued in pretrial rulings. *Id.* Our Supreme Court stated that it was unreasonable to expect any attorney to be adequately prepared to try a bifurcated capital case with numerous witnesses in only thirty-four days. *Id.*

The *Rodgers* case is distinguishable from the case before us. Defendant's case did not possess the degree of complexity as the issues in *Rodgers.* This was not a capital case and there were a limited number of witnesses testifying at trial. Furthermore, the timeline in the case before us did not prevent defendant's counsel from following basic pretrial procedures.

Defendant offered no supporting affidavit or other evidence at trial to demonstrate the need for a continuance. Defendant also fails to show how his case would have been better prepared had a continuance been granted or that he was materially prejudiced by denial of his motion for a continuance. Defendant argues that he could have testified more effectively had he been granted a continuance. His argument is insufficient to warrant a new trial, especially in light of his lack of cooperation with his court-appointed attorneys. Defendant also argues that he was prejudiced by counsel calling him by the wrong name. However, defendant fails to demonstrate how counsel's mental error concerning defendant's name prejudiced him at trial. The trial court did not err in denying defendant's motion for a continuance. This assignment of error is without merit.

[2] Defendant next argues the trial court committed plain error by permitting his jury trial to begin while defendant was still dressed in his jail uniform. Defendant contends that his appearance in jail clothes impaired his presumption of innocence and deprived him of due process and a fair trial.

> Plain error is an error which was "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result.

*State v. Jones,* 137 N.C. App. 221, 226, 527 S.E.2d 700, 704 (2000) (quoting *State v. Bagley,* 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987)

(citations omitted), *cert. denied,* 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)). Our Supreme Court has stated that

> "[t]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial." ' "

*State v. Steen,* 352 N.C. 227, 255, 536 S.E.2d 1, 18 (2000) (quoting *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)) (emphasis omitted), *cert. denied,* 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

" '[W]hile it is unlawful for any sheriff, jailer or other officer to require a prisoner to appear in court for trial dressed in the uniform of a prisoner, it is not necessarily unlawful for a prisoner to so appear.' " *State v. Johnson,* 128 N.C. App. 361, 364, 496 S.E.2d 805, 807 (1998) (quoting *State v. Berry,* 51 N.C. App. 97, 101-02, 275 S.E.2d 269, 272, *disc. review denied,* 303 N.C. 182, 280 S.E.2d 454 (1981)), *cert. denied,* 350 N.C. 842, 538 S.E.2d 581 (1999). Defendant failed to object to his attire at the beginning of his trial and the record demonstrates that defendant was given an opportunity to change into a suit of clothes during the morning break. Defendant has failed to demonstrate that the trial court committed fundamental error resulting in the denial of justice or to show that the jury would have reached a different result had the jury not viewed him in prison attire. The trial court did not err, nor deprive defendant of justice or a fair trial. This assignment of error is without merit.

**[3]** Defendant next argues the trial court erred in allowing the State to cross-examine defendant about convictions that were more than ten years old. Defendant contends he was unfairly and presumptively prejudiced by the admission into evidence of a 1982 conviction for possession of a controlled substance and a 1984 conviction for brandishing a firearm.

> Evidence of a conviction . . . is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the

conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

N.C. Gen. Stat. § 8C-1, Rule 609(b) (2001); *see State v. Hunt*, 123 N.C. App. 762, 769-70, 475 S.E.2d 722, 726 (1996); *State v. Blankenship*, 89 N.C. App. 465, 366 S.E.2d 509 (1988). "[I]n order to adequately review the careful weighing of probative value and prejudicial effect necessitated by an evidentiary rule, an appellate court must consider the factual context of the entire trial." *Hunt*, 123 N.C. App. at 770, 475 S.E.2d at 727.

"Whether to exclude relevant but prejudicial evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992). This Court will not overturn the decision of a trial court unless it "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission. The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded.

*State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (citations omitted); *see also* N.C. Gen. Stat. § 15A-1443(a) (2001).

When considering evidence of convictions more than ten years old, the trial court must conduct a balancing test to determine if the probative value of the evidence substantially outweighs its prejudicial effect. *Hunt*, 123 N.C. App. at 769, 475 S.E.2d at 726.

"[I]n those rare instances where the use of the older prior convictions [is] not more prejudicial than probative, the trial court must make appropriate findings of fact." These findings must concern "specific facts and circumstances which demonstrate the probative value outweighs the prejudicial effect."

*State v. Farris*, 93 N.C. App. 757, 761, 379 S.E.2d 283, 285 (1989) (citations omitted), *disc. review improvidently allowed*, 326 N.C. 45, 387 S.E.2d 54 (1990).

The transcript shows that defendant objected to the evidence of prior convictions beyond ten years and the trial court consulted with

both attorneys at the bench after each question. However, there is no indication in the transcript that the trial court made appropriate findings of fact in evaluating the probative value of the evidence. There are no findings of specific facts and circumstances in the record to support the trial court's determination that the evidence was more probative than prejudicial. The trial court's admission of defendant's prior convictions beyond ten years was error and we now examine whether defendant was prejudiced.

Defendant testified on direct examination that he had provided extensive assistance to law enforcement, including the FBI, ATF, and City of Richmond police, and was instrumental in the arrest and conviction of several criminals. During cross-examination the State asked defendant about his convictions and prison time in Virginia during the 1980's. Defendant attempted to avoid the State's question and evidence of his prior convictions was used to establish defendant's presence in Virginia during the 1980's. Evidence of his prior convictions also impeached defendant's denial that he had been in federal prison. Finally, the convictions served to rebut the self-aggrandized character testimony offered by defendant.

"[E]vidence which is otherwise inadmissible is admissible to explain or rebut evidence introduced by defendant." *State v. O'Hanlan*, 153 N.C. App. 546, 561, 570 S.E.2d 751, 761 (2002). Defendant opened the door to impeachment of his character by testifying that he played major roles in law enforcement in the 1980's, thus permitting the State to offer evidence of defendant's bad character. *See Gappins*, 320 N.C. at 69-70, 357 S.E.2d at 658 (permitting cross-examination about specific conduct of the defendant where the defendant had put a "pertinent trait of his character" into issue). Since defendant's questionable character evidence arose from events more than twenty-five years prior to trial, admission of the evidence of convictions from that time period was appropriate to rebut defendant's testimony. Defendant's testimony regarding his own character of over twenty-five years ago warranted temporally proximate evidence for the purpose of rebuttal. *See O'Hanlan*, 153 N.C. App. at 561, 751 S.E.2d at 761 ("[W]here a defendant . . . raise[s] an inference favorable to defendant, which is contrary to the facts, defendant opens the door to the introduction of the State's rebuttal or explanatory evidence about the matter."); *see also State v. Bullard*, 312 N.C. 129, 157-58, 322 S.E.2d 370, 386 (1984) (finding that the defendant opened the door to cross-examination about the

details of a shooting). The trial court did not abuse its discretion in admitting evidence of defendant's prior convictions.

Finally, defendant has failed to demonstrate that he was prejudiced by the admission of the convictions. Defendant has not shown that the outcome of the trial likely would have been different had evidence of these two convictions been excluded. Any error in the admission of the evidence was harmless in light of the overwhelming evidence of defendant's guilt. This assignment of error is without merit.

[4] Defendant next argues that he was denied due process of law because the trial judge admonished him in front of the jury. Defendant contends the judge's instruction ordering defendant not to speak to the jury harmed his credibility and biased the jurors. N.C. Gen. Stat. § 15A-1222 (2001) states that a "judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." Judges must be careful to ensure they do not directly or indirectly convey an opinion to the jury. *State v. Jenkins*, 115 N.C. App. 520, 524-25, 445 S.E.2d 622, 625, *disc. review denied*, 337 N.C. 804, 449 S.E.2d 752 (1994). "Whether the judge's comments, questions or actions constitute reversible error is a question to be considered in light of the factors and circumstances disclosed by the record, the burden of showing prejudice being upon the defendant." *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985). "[I]n a criminal case it is only when the jury may reasonably infer from the evidence before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence or a witness's credibility that prejudicial error results." *Id.*

In the case before us, defendant responded to the first question of his direct examination by asking the jury if they could hear him. The judge subsequently stated, "Mr. Smith, you need to just answer your lawyer's questions. Do not speak to the jury again." After defendant responded, the judge further stated, "That's exactly what I said. Do not speak to the jury directly again. Don't ask them any questions. You answer your lawyer's questions."

After an examination of the record, we find that the jury could not have reasonably inferred that the trial judge intimated an opinion as to defendant's credibility. The trial judge's comments were "made in the course of the right and duty the trial judge had to control exam-

ination and cross-examination of witnesses." *State v. Alverson,* 91 N.C. App. 577, 579, 372 S.E.2d 729, 730 (1988). The judge was simply instructing defendant to refrain from speaking with the jurors in order to maintain proper decorum and order in the trial. There is no evidence that the judge harbored an opinion concerning defendant or his credibility. Furthermore, defendant has failed to demonstrate that he was prejudiced by the judge's statements. This assignment of error is without merit.

**[5]** Defendant next argues the trial court committed plain error by failing to instruct the jury on lesser-included offenses of felony assault inflicting serious injury and misdemeanor assault inflicting serious injury. Defendant contends the trial court should have given these instructions because the evidence regarding defendant's pistol whipping of Berger was conflicting. As previously discussed, the burden on defendant to demonstrate plain error is high. "To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result." *Jones,* 137 N.C. App. at 226, 527 S.E.2d at 704.

> Our Supreme Court has held that a trial court must instruct the jury on a lesser-included offense only if there is evidence that the defendant might be guilty of the lesser-included offense. Evidence of a lesser-included offense must be evidence that might convince a rational trier of fact to convict of the lesser offense. If the State's evidence is clear and positive as to each element of the charged offense, and if there is no evidence of the lesser-included offense, there is no error in refusing to instruct on the lesser offense.

*State v. Hannah,* 149 N.C. App. 713, 721, 563 S.E.2d 1, 6 (citations omitted), *disc. review denied,* 355 N.C. 754, 566 S.E.2d 81 (2002).

In *State v. Bell,* 87 N.C. App. 626, 362 S.E.2d 288 (1987), this Court held that it was plain error not to include an instruction for simple assault on a charge of assault with a deadly weapon inflicting serious injury. The evidence in *Bell* presented an issue as to whether the defendant used a firearm during an assault, but the jury instructions did not provide jurors with alternative options for resolving the issue. In granting a new trial, we reasoned that there was "no way to ascertain what verdict the jury might have reached had they been given an alternative." *Id.* at 635, 362 S.E.2d at 293.

In the case before us, there was conflicting evidence as to whether defendant used a pistol to assault Berger. The trial court instructed the jury on the charge of assault with a deadly weapon inflicting serious injury as alleged in the indictment. The trial court also instructed the jury on assault with a deadly weapon and simple assault. Instruction on these two lesser included offenses gave the jury sufficient alternatives, by removing one element of the greater charge. If the jury believed that defendant assaulted Berger with a pistol but did not inflict serious injury, or that defendant assaulted Berger without a pistol, it could have reached either verdict consistent with the jury instructions. The instructions defendant argues for on appeal would have provided no additional bases for resolution of the factual issues because the conceivable options were covered under the instructions actually given. The jury instructions provided a sufficient framework for ascertaining the jury's decision in the face of alternatives and constituted instruction on lesser included offenses as required by law. This assignment of error is without merit.

**[6]** Defendant next argues the trial court erred in not vacating the judgment for sale of a controlled substance due to a fatal variance between the indictment and the evidence presented at trial. Defendant contends that the indictment alleges sale of marijuana to Berger while the evidence actually showed a sale of marijuana to Chadwell.

> [A]n indictment for the sale and/or delivery of a controlled substance must accurately name the person to whom the defendant allegedly sold or delivered, if that person is known. A defendant must be convicted, if at all, of the particular offense charged in the indictment. The State's proof must conform to the specific allegations contained in the indictment. If the evidence fails to do so, it is insufficient to convict the defendant of the crime as charged.

*State v. Wall*, 96 N.C. App. 45, 49, 384 S.E.2d 581, 583 (1989) (citations omitted).

In *Wall*, we held there was a fatal variance between the indictment and evidence presented at trial based on facts similar to this case. The indictment in *Wall* charged the defendant with the sale and delivery of cocaine to Mr. Riley. *Id.* at 49, 384 S.E.2d at 583. The evidence in the record showed that Mr. Riley gave money to his friend, Ms. McPhatter, to purchase cocaine from the defendant. *Id.* at 47, 384 S.E.2d at 582. While there was evidence that the defendant knew the

two individuals had been together, our Court found there was not substantial evidence presented at trial that the defendant sold and delivered the cocaine to Mr. Riley, as alleged in the indictment. The evidence was insufficient to permit a jury to determine whether or not the defendant knew Ms. McPhatter was acting on behalf of Mr. Riley. *Id.* at 50, 384 S.E.2d at 583.

An examination of the trial transcript in the case before us shows no substantial evidence that defendant knew he was selling marijuana to Berger, as alleged in the indictment. While the testimony by Berger indicates that he and Chadwell went to defendant's establishment to purchase marijuana and that Chadwell entered the building to make the purchase on their behalf, there is no testimony that defendant knew Chadwell was acting on Berger's behalf at the time of the marijuana sale. The evidence was insufficient to permit a jury to determine that defendant knowingly sold marijuana to Berger. Therefore, there was a fatal variance between the indictment and evidence at trial and the trial court should have vacated the judgment. As our Court stated in *Wall*, "[w]e note that the State is at liberty to obtain another bill of indictment charging defendant with sale and delivery to [Chadwell]." *Id.* We vacate the judgment on the sale of a controlled substance.

[7] Defendant next argues that the trial court erred in denying his motion to dismiss the possession of a firearm by a convicted felon charge at the close of all the evidence. Defendant contends that the building in which he possessed the gun was his home, thus constituting an exception under N.C. Gen. Stat. § 14-415.1(a) (2001), which permits a convicted felon to have possession of a firearm within his own home.

> A defendant who is charged with [possession of a firearm by a convicted felon] and seeks to utilize the exception has the burden of bringing himself within the exception. Absent any evidence that defendant is within the exception of the statute, the State is required to prove only that defendant possessed a handgun within five years of his conviction of or release from prison for a felony specified in N.C. Gen. Stat. § 14-415.1(b).

*State v. Bishop*, 119 N.C. App. 695, 698, 459 S.E.2d 830, 832 (1995) (citations omitted).

In *State v. McNeill*, 78 N.C. App. 514, 337 S.E.2d 172 (1985), *disc. review denied*, 316 N.C. 383, 342 S.E.2d 904 (1986), the defendant

possessed a gun in the commons area of a residential housing complex and argued that he was within the statutory exception for "one's own home." In defining the word "home," this Court stated:

> By using the words "within his own home" in the exception, as opposed to some broader terminology, the Legislature clearly expressed its intent to limit the applicability of the exception to the confines and privacy of the convicted felon's own premises, over which he has dominion and control to the exclusion of the public.

*Id.* at 516, 337 S.E.2d at 173. We held that the exception did not apply and that the word "home" did not "encompass common areas of an apartment house, such as stairways, hallways and porches." *Id.* Similarly, in *State v. Cloninger*, 83 N.C. App. 529, 532, 350 S.E.2d 895, 897 (1986), our Court held that the exception did not apply to the common areas of motels.

In *State v. Locklear*, 121 N.C. App. 355, 465 S.E.2d 61 (1996), our Court held that the statutory exception did not apply when the defendant possessed a gun outside of a trailer that he owned but did not live in. *Id.* at 359, 465 S.E.2d at 64. We ruled that the defendant had surrendered domain and control of the trailer property when he rented it to tenants and consequently was not covered by the exception. *Id.* Similarly, our Court has determined that the exception does not apply when a defendant takes a pistol onto his neighbor's property. *State v. Hinson*, 85 N.C. App. 558, 355 S.E.2d 232, *disc. review denied*, 320 N.C. 635, 360 S.E.2d 98 (1987).

"Defendant's location at the time of the offense would be a substantive issue, requiring negative proof by the State . . . only upon some positive evidence by defendant that defendant's location was within the exception to the statute." *McNeill*, 78 N.C. App. at 517, 337 S.E.2d at 174. In the case before us, defendant testified that he lived in the building and considered it a hangout or pool club. Defendant said that he slept on the sofa and that he showered at the homes of his girlfriend, mother, or daughter. Defendant testified that the property was deeded to his daughter and that he did not own the building. There is no evidence that he paid rent to his daughter. Testimony demonstrated that there were no items of personal clothing, bed, or other indication that the building was being used by someone as a home.

Viewing the evidence in a light most favorable to the State, we find there was substantial evidence in the record to permit a reason-

able juror to conclude that the premises did not constitute defendant's home. The evidence supports a conclusion that defendant did not maintain exclusive dominion and control over the premises. The jurors were able to weigh the evidence and conclude that defendant was not covered by the statutory exception. The trial court did not err by refusing to dismiss the charge of possession of a firearm by a convicted felon. This assignment of error is without merit.

[8] Finally, defendant argues the trial court erred in calculating his prior record level because there was insufficient evidence in the record to support defendant's prior convictions. The State concedes that the trial court sentenced defendant based on a prior record level worksheet submitted by the district attorney without further documentation or stipulation by defendant. *See* N.C. Gen. Stat. § 15A-1340.14(f) (2001).

In *State v. Goodman*, 149 N.C. App. 57, 560 S.E.2d 196 (2002), we held that the State failed to prove the defendant's prior record level by a preponderance of the evidence where it did not submit evidence to prove that fact. While "the trial court [could] accept any method of proof which it deem[ed] reliable," the trial court failed to make findings regarding the reliability of the information used. *Id.* at 71, 560 S.E.2d at 205. Without entering evidence of the defendant's prior record level into the record, the State failed to satisfy its burden.

In the present case, the State failed to prove defendant's prior record level by a preponderance of the evidence. The State must offer into evidence documentation to prove defendant's prior record level. We remand this case for a resentencing hearing.

In summary, the trial court erred in not dismissing the sale of a controlled substance charge and that conviction is vacated. We find error in the sentencing of defendant and remand for resentencing. We find no error as to the remaining issues.

Vacated in part and remanded for resentencing.

Judges GREENE and WYNN concur.