STATE OF NORTH CAROLINA v. RUBY LAWLESS LAMB

No. 8611SC818

(Filed 17 March 1987)

1. **Criminal Law § 99.7— witness' admission of lying—court's admonition proper**

    The trial court did not commit prejudicial error in admonishing a witness, out of the presence of the jury but in the presence of other witnesses, that she could be subject to perjury and contempt of court because of her testimony, since the trial judge made his remarks in a proper and non-threatening manner after the witness had admitted several times that she had lied.

2. **Criminal Law § 91— speedy trial—indictment dismissed—time properly excluded from computation**

    In a case in which the district attorney has dismissed an indictment pursuant to N.C.G.S. § 15A-931 and then reinstated charges, N.C.G.S. § 15A-701(b)(5) specifically excludes from computation of the 120-day period of the Speedy Trial Act "any period of delay from the date the initial charge was dismissed to the date the time limit for trials under this section would have commenced to run as to the subsequent charge"; furthermore, the fact that the district attorney improperly took the dismissal "with leave," that the criminal investigation continued, and that defendant's bail bond was not discharged as it should have been did not prejudice defendant, since she was not required to appear or to render herself amenable to the orders and processes of the court at any time during the challenged time period.

3. **Constitutional Law § 50— speedy trial—failure to argue claim to trial judge**

    There was no merit to defendant's contention that the trial judge erred in failing to rule on her claim that the State violated her constitutional right to a speedy trial, since defendant failed to present evidence on, or even to argue, her constitutional speedy trial claim to the trial judge.

4. **Criminal Law §§ 21, 148.1— denial of motion in limine to exclude evidence—reviewability on appeal**

    The denial of defendant's motion *in limine* in a homicide case to exclude evidence implicating defendant in three earlier unrelated murders was reviewable even though defendant did not testify at the trial. A different result was not required by the decision of *Luce v. United States*, 469 U.S. 38 (1984), because (1) a non-constitutional decision of the U.S. Supreme Court cannot restrict how N.C. courts interpret and apply N.C. evidence law, and (2) this case is distinguishable from *Luce* since the evidence was not probative of defendant's character for truthfulness under N.C.G.S. 8C-1, Rule 608(b), and thus no weighing of probative value and prejudicial effect was necessary, and since the record indicates defendant's intention to testify had the motion *in limine* been allowed.

5. **Criminal Law § 34.7— defendant's involvement in other killings—inadmissibility to show motive—motion in limine improperly denied**

    The trial judge in a homicide case abused his discretion in denying defendant's motion *in limine* to exclude evidence implicating defendant in three

earlier killings since such evidence was not admissible under N.C.G.S. 8C-1, Rule 404(b) to show motive, and the court's ruling effectively denied defendant her right to testify.

APPEAL by defendant from *Bowen, Wiley F., Judge.* Judgment entered 24 January 1986 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 13 January 1987.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Daniel R. Pollitt, for defendant appellant.*

BECTON, Judge.

From a judgment imposing a fifteen-year sentence following her conviction of second degree murder, defendant appeals. On appeal, defendant contends that the trial court committed prejudicial error (1) in admonishing a witness, out of the presence of the jury but in the presence of other witnesses, that she could be subject to perjury and contempt of court because of her testimony; (2) in denying defendant's motion to dismiss on grounds that her statutory right to a speedy trial was violated; (3) in failing to rule on defendant's motion to dismiss on grounds that her constitutional right to a speedy trial was violated; (4) in denying defendant's motion *in limine* to exclude any evidence implicating defendant in other killings; and (5) in failing to give defendant's requested jury instructions and in giving improper and prejudicial instructions. Believing the trial court committed prejudicial error in denying defendant's motion *in limine*, we award defendant a new trial.

I

During the fall of 1983 defendant, Ruby Lawless Lamb, lived in Cowpens, South Carolina, with her three grandchildren. Her husband, David Lamb, worked on a construction job 200 miles away in Clayton, North Carolina, and Mr. and Mrs. Lamb saw each other on weekends. On Monday, 3 October 1983, David Lamb was found dead in his trailer at Clayton. A pistol was in his left hand, a gun cleaning rod was in his right hand, and a fatal bullet wound was in his chest. Preliminary investigation indicated that

the gun "could have been accidentally fired." The investigation continued however, and law enforcement officers interviewed family members and neighbors in Cowpens and in Clayton regarding what they saw or heard. The family members denied having knowledge of the circumstances surrounding David Lamb's death. On 7 April 1984, defendant was indicted for first degree murder of her husband, David Lamb. On 14 August 1984, the district attorney "enter[ed] a . . . dismissal [w]ith leave pending the completion of the investigation . . . ." Defendant was reindicted for the first degree murder of David Lamb on 22 July 1985.

In October 1985, two years after David Lamb's death, Albert Wesley Warlick, then aged sixteen, left the home of his grandmother, the defendant, and traveled to Bessemer City, North Carolina. There, on 14 October 1985, Albert told law enforcement officers that he was present when defendant killed David Lamb. Albert's statement, which was reduced to writing, was totally inconsistent with his prior October 1983 statement to law enforcement officers, totally inconsistent with Albert's later 12 November 1985 tape recorded statement to defendant's attorney, and it also varied slightly from Albert's trial testimony. Several of defendant's other relatives testified either for the State or the defendant, but their trial testimony was also inconsistent with prior statements they had given.

## II

[1] Defendant first contends that her relatives would have testified consistently with their original statements—that they knew nothing about the circumstances surrounding David Lamb's death—had the trial court not improperly and unconstitutionally "stifled the free presentation of testimony by warning and threatening witness Gayles Faye Crooks, in the presence of witnesses James Stephen Moody and Sheila Jones, that she could be subject to perjury and contempt of court because of her testimony."

The applicable legal rules supporting defendant's contentions are familiar:

(1) "[J]udicial warnings and admonitions to a witness . . . made in or out of the presence of the jury . . . with reference to perjury are not to be issued lightly or impulsively. Unless

given discriminately and in a careful manner they can upset the delicate balance of the scales which a judge must hold even-handedly. Potential error is inherent in such warnings, and in a criminal case, they create special hazards." *State v. Rhodes*, 290 N.C. 16, 23, 224 S.E. 2d 631, 636 (1976);

(2) Conduct or warnings by a district attorney with reference to a witness's alleged perjured testimony can "likewise deprive defendant[s] of due process of law" and constitute reversible error. *State v. Mackey*, 58 N.C. App. 385, 388, 293 S.E. 2d 617, 619 (1982), *pet. for review denied*, 306 N.C. 748, 295 S.E. 2d 484; and

(3) Other witnesses present in the courtroom can be intimidated by improper warnings about perjury, whether given by the court or the district attorney, so as to stifle the full and free submission of evidence. *See State v. Rhodes*, 290 N.C. at 24, 224 S.E. 2d at 636.

We do not question the prudential value of these rules. The evil they are designed to prevent is obvious. For example, in *Rhodes*, the trial judge actually accused the witness of not telling the truth; in *Locklear*, the trial judge repeatedly admonished the witness for her failure to respond to questions and also accused the witness of not being truthful. In this case, however, we find nothing in the following colloquy suggesting that the trial judge's statements were accusatory and threatening, that the district attorney's admonitions were reversibly prejudicial, or that any action of the trial judge or district attorney caused witnesses Crooks, Moody, or Jones to violate their oaths to tell the truth:

A. Maybe I lied, maybe I was the one that lied.

Q. I didn't ask you that. I asked you didn't Ruby Lawless Lamb tell you that she shot David Lee Lamb and that Wesley Warlick was present at the time in his trailer in Clayton?

A. I lied.

Q. Did you tell, did you make that statement to Detective Eatman?

A. If I made it, I lied.

Q. Well, a moment ago you said she may have been drinking. Were you lieing [sic] then?

A. Yes.

Q. *So you have lied since you have been on the witness stand?* [Emphasis added.]

A. I lied on it all the way.

. . . .

Q. You do not deny making a statement to Detective Eatman that Ruby Lawless Lamb told you that she shot David Lee Lamb at his trailer and Wesley Warlick was present and she set it up to look like an accident—you admit telling Detective Eatman that, do you not?

A. I said it, but I lied.

Q. Well, why would you lie to Detective Eatman?

A. I'm just a liar.

. . . .

Q. I want you to think about this real carefully—you were sworn before you took the witness stand?

A. That's right.

Q. *And you are telling this court you have lied while you have been on the witness stand*—you understand the meaning of talking [sic] the oath, do you not? [Emphasis added.]

A. *Yes.* [Emphasis added.]

Q. And I am going to ask you again whether or not Ruby Lamb told you how she killed David Lee Lamb and if she didn't set it up to look like an accident?

A. No.

Q. Was that a lie?

A. That was a lie.

. . . .

Q. And since you have gotten on the stand you have changed your mind about testifying against your sister, haven't you?

A. I didn't want to testify to begin with.

Q. And you don't want to testify now?

A. That's right.

. . . .

Q. And now you don't want to tell the truth about it and you don't want to testify against her, is that true?

A. Would you testify against your sister?

COURT: Ma'am, that is not the question. The question is — you were subpoenaed to be here. You have taken an oath to tell the truth. You are under a duty to answer the lawyer's questions and I must respectfully inform you that if you refuse to answer the lawyer's question, I have no alternative except to hold you in contempt of court, and I must further inform you that if you intentionally lie on this stand, you are subjecting yourself to perjury. Do you understand that?

A. I understand.

MR. TWISDALE: Your Honor, that's all I have to ask at this time out of the presence of the jury.

. . . .

MR. TWISDALE: Your Honor, I would like to ask one other question out of the presence of the jury.

COURT: All right.

Q. I would like to ask you, Mrs. Crooks, if you understood the warning concerning contempt?

A. Yes, sir, I did.

Q. Well, now I would like to ask you at this time if you are willing to proceed to answer my questions under oath and tell the truth?

A. Yes, sir.

MR. TWISDALE: I am ready to proceed, Your Honor.

COURT: Bring the jury in, please.

After the witness Crooks had admitted several times that she had lied, the trial judge in a proper and non-threatening man-

State v. Lamb

ner, reminded the witness of the significance of the oath and of the consequences of perjury. Neither the district attorney's remarks nor the fact that witnesses Moody and Jones were in the courtroom elevates the colloquy into an accusatory, threatening and prejudicial exchange. This assignment is overruled.

### III

[2]   A. Defendant next contends that the trial court abused its discretion by denying her pretrial motion to dismiss the indictment because the State violated the Speedy Trial Act. The following chronology helps put their argument in focus.

| | |
|---|---|
| 14 March 1984 | Arrest warrant issued |
| 23 March 1984 | Defendant waived extradition and submitted to arrest |
| 2 April 1984 | Original indictment |
| 6 April 1984 | State opposes, and defendant denied, appearance bond |
| 10 April 1984 | Defendant requests discovery |
| 10 May 1984 | Defendant released on $20,000 secured appearance bond |
| 15 June 1984 | State agrees to provide discovery |
| 28 June 1984 | Discovery order entered |
| 14 August 1984 | Discovery provided. Indictment dismissed, defendant having appeared in court prepared for trial 4 times between May and August 1984 |
| 22 July 1985 | New indictment |
| 15 October 1985 | Defendant rearrested in North Carolina |
| 17 October 1985 | Defendant requests discovery |
| 28 October 1985 | Defendant files motion for discovery |
| 31 October 1985 | Defendant files speedy trial motions based on statutory and constitutional grounds |
| 15 November 1985 | Court denied motion to dismiss for failure to comply with speedy trial act. Defendant's constitutional claim not addressed. |

---

**State v. Lamb**

---

15 November 1985    State's motion to continue until 2 December 1985 granted over defendant's objection.

5 December 1985     State's motion to continue until 20 January 1986 granted over defendant's objection.

16 January 1986     Defendant filed renewed motion to dismiss on statutory and constitutional speedy trial grounds

20 January 1986     Court denied renewed motion.

20 January 1986     Case called for trial 668 days after defendant was first arrested.

In its 15 November 1985 ruling on defendant's original "Motion to Dismiss Indictment for Failure to Comply with Speedy Trial Act," the trial court included ten days and excluded 590 days for the 609-day time period from the 2 April 1984 original indictment to the 2 December 1985 scheduled session of court. However, the sole basis for defendant's contention that her statutory speedy trial rights were violated is that the trial judge improperly excluded the 342-day time period between the dismissal of the first indictment on 14 August 1984 and the reindictment on 22 July 1985.

B. The North Carolina Speedy Trial Act, N.C. Gen. Stat. Sec. 15A-701, *et seq.* (1983), provides that a criminal defendant shall be brought to trial "[w]ithin 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last." G.S. Sec. 15A-701(a)(1). However, in a case in which the district attorney has dismissed an indictment "under the authority of G.S. 15A-931"[1] and then reinstated charges, the statute specifically excludes from com-

---

1. G.S. 15A-931 (1983) which provides for voluntary dismissal of charges by the State states:

(a) Except as provided in G.S. 20-138.4, the prosecutor may dismiss any charges stated in a criminal pleading by entering an oral dismissal in open court before or during the trial, or by filing a written dismissal with the clerk at any time. The clerk must record the dismissal entered by the prosecutor and note in the case file whether a jury has been impaneled or evidence has been introduced.

(b) No statute of limitations is tolled by charges which have been dismissed pursuant to this section.

putation of the 120-day period "any period of delay from the date the initial charge was dismissed to the date the time limit for trials under this section would have commenced to run as to the subsequent charge." G.S. 15A-701(b)(5).

Defendant argues that the G.S. Sec. 15A-701(b)(5) exclusion is not applicable because (1) the 2 April 1984 indictment was not dismissed under the authority of G.S. Sec. 15A-931 since the notice of dismissal stated that the "prosecutor enters a dismissal . . . with leave"[2] and (2) the indictment remained pending after the dismissal with leave because (a) defendant remained on the $20,000 secured bail bond which she executed before the dismissal with leave and (b) law enforcement officials continued to investigate the case after the dismissal with leave.

Defendant relies in part on *Klopfer v. North Carolina*, 386 U.S. 213, 18 L.Ed. 2d 1 (1967) in which the Supreme Court declared the North Carolina *"nolle prosequi* with leave" procedure unconstitutional because it had the unlawful effect of "indefinitely postpon[ing] prosecution" and holding the defendant "subject to trial throughout [an] unlimited period" after an indictment had issued. 386 U.S. at 214, 216. Defendant also relies on *State v. Hearld*, 65 N.C. App. 692, 309 S.E. 2d 546 (1983), *cert. denied*, 310 N.C. 479, 312 S.E. 2d 887 (1984), in which this Court stated: "[u]nder the present system of voluntary dismissals, no indictment is left pending. G.S. 15A-931." 65 N.C. App. at 695, 309 S.E. 2d at 548.

Defendant's reliance on *Klopfer* is misplaced. The issue in *Klopfer* was whether the State could indefinitely postpone prosecution on an indictment. As the *Klopfer* Court explained, "[a] *nolle prosequi* discharged the defendant but not the indictment; the indictment remained alive, and the State could institute proceedings on that indictment at any time." In this case, the defendant was reindicted. The provisions of G.S. 15A-931 which allows a

2. The notice of dismissal read, in pertinent part, as follows:

/X/ DISMISSAL

The undersigned prosecutor enters a dismissal to the above charge(s) and assigns the following reasons:

/X/ Other (specify) With leave pending the completion of the investigation by the appropriate authorities.

prosecutor to take a voluntary dismissal "at any time" do not bar the initiation of subsequent charges, if jeopardy has not attached and if an applicable statute of limitations has not run. Commentary, G.S. 15A-931.

Similarly, *Hearld* allows no relief for defendant. Indeed, this Court's language in *Hearld*, that no indictment is left pending when the State takes a voluntary dismissal under 15A-931, supports the State's argument that the district attorney had no authority to take a dismissal with leave and that the " 'with leave' language added nothing to the notice of dismissal . . . and took nothing away." And although criminal investigations can always continue following a 15A-931 voluntary dismissal, we deem it important to express our disapproval of the insertion of the "with leave" language in 15A-931 notices of dismissal. No defendant whose indictment has been dismissed under G.S. Sec. 15A-931 should be made to feel that he or she is subject to prosecutorial control.

In this case, no criminal proceedings took place during the period from 14 August 1984 until the new indictment on 22 July 1985, and defendant was not subject to prosecutorial control. We therefore hold that the dismissal in this case was proper, and it terminated all proceedings against the defendant. By necessity, this holding means that defendant's bail bond should have been discharged. However, we find no prejudice to the defendant since defendant was not required to appear or to render herself amenable to the orders and processes of the court at any time during the challenged time period.

## IV

[3] In addition to defendant's motion to dismiss based on the Speedy Trial Act, defendant also moved to dismiss the indictment because the State violated her constitutional right to a speedy trial. Defendant now contends that the trial judge erred in failing to rule on her constitutional claim. Normally, a trial judge's failure to rule on a speedy trial motion, and to support its ruling with appropriate factual findings and conclusions of law, entitles a defendant to a new trial, or at least a remand for a new hearing. *See State v. Rogers*, 49 N.C. App. 337, 341, 271 S.E. 2d 535, 539 (1980) (this Court suggested that trial judges should "detail for the record findings of fact and conclusions of law in support of

their rulings") and *State v. Smith*, 70 N.C. App. 293, 297-98, 319 S.E. 2d 647, 650 (1984) (new trial warranted if trial judge fails to make required findings). However, in the case *sub judice*, defendant failed to present evidence on, or even to argue, her constitutional speedy trial claim to the trial judge. Perhaps defendant concluded after losing on her Speedy Trial Act claim that the following four well-recognized factors, considered in determining one's constitutional claim to a speedy trial, did not weigh in her favor since she could not show an unreasonable delay or prejudice: (1) the length of the delay; (2) the reason for the delay; (3) any waiver of right by the defendant; and (4) any prejudice to the defendant. In any event, defendant never objected to or timely mentioned the trial judge's failure to rule on her motion. In fact, at the close of the hearing regarding defendant's statutory speedy trial claim, the trial judge asked if there was anything further, and defense counsel indicated on two separate occasions that nothing else need be decided. Under these circumstances, defendant has waived her right now to complain.

## V

Defendant next contends that the trial judge erred in denying her motion *in limine*. During the State's investigation of David Lamb's death, several of defendant's relatives gave voluntary statements to the police in which they said defendant told them she took part in three earlier unrelated murders. These other murders were alleged to have occurred in 1958 and 1967.

Before trial, defendant moved to exclude any evidence concerning the alleged murders; however, the trial judge deferred his ruling. The district attorney did not elicit any of the evidence concerning the alleged murders from any witness during trial. Before defendant rested her case, she renewed her motion *in limine*. The trial judge denied the motion, saying he was "not going to put the muzzle on cross-examination." Defendant then chose not to testify.

Defendant argues that the trial judge's ruling to admit the evidence of other alleged killings was prejudicially erroneous and effectively denied her her right to testify. The State argues that the denial of defendant's motion is not reviewable on appeal and that, even if it were, the denial was proper.

---

---

**[4]** The State's argument that the denial of the defendant's motion *in limine* is not reviewable on appeal is based on its interpretation of the United States Supreme Court's holding in *Luce v. United States*, 469 U.S. 38, 83 L.Ed. 2d 443 (1984). We conclude (a) that *Luce* is not binding on this Court, (b) that *Luce* is distinguishable from the case at bar, and (c) that the trial judge committed reversible error in denying the motion *in limine* in this case.

A. In *Luce* the Supreme Court held that the denial of a motion *in limine* which was based on the trial judge's decision to admit evidence under Rule 609 of the Federal Rules of Evidence[3] was not reviewable on appeal because the defendant did not testify. The Court reasoned that

> [a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1) which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.

*Id.* at 41, 83 L.Ed. 2d at 447.

The United States Supreme Court's non-constitutional *Luce* decision cannot bind or restrict how North Carolina courts interpret and apply North Carolina evidence law. This Court is free to disagree with the holding in *Luce* as other state courts have done. *See State v. McClure*, 298 Or. 336, 692 P. 2d 579, 584 n.4 (1984) (en banc). *United States v. Kiendra*, 663 F. 2d 349, 352 (1st Cir. 1981) and *United States v. Lipscomb*, 702 F. 2d 1049, 1069 (D.C. Cir. 1983) both list cogent policy reasons in favor of appellate review:

> First, when a defendant seeks an advance ruling on admission of a prior conviction, it is reasonable to presume that the ruling will be an important factor in his decision whether to testify. *See Kiendra*, 663 F. 2d at 352. Second, advance rul-

---

3. The North Carolina Rules of Evidence mirror almost completely the Federal Rules of Evidence. Thus rulings on the Federal Rules of Evidence are often helpful.

ings on admissibility are preferable because "[c]ounsel need to know what the ruling will be on this important matter so that they can make appropriate tactical decisions." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* P.609[05], at 609-82 (1981), *quoted in Jackson*, 627 F. 2d at 1209. To limit review of advance rulings would undercut the value of such rulings. *See Kiendra*, 663 F. 2d at 352-53. Third, and most important, the [contrary] rule will probably serve merely as a trap for unwary defendants or defense counsel. (Footnote omitted.)

709 F. 2d 1049, 1069.

The requirement that a defendant must testify to preserve reviewability of rulings renders motions *in limine* ineffective. Our decision not to follow *Luce* creates no boon for defendants; it creates no legally recognized disadvantage for the district attorney. If a district attorney has a good faith basis to question a particular defendant's willingness to testify or the potential impact of defendant's testimony, the district attorney can apprise the trial judge of its doubts by filing a response to the motion *in limine. See United States v. Kiendra*, 663 F. 2d at 352. But when, as in the case *sub judice*, the district attorney does not challenge the defendant's motives[4] and the trial judge denies defendant's motion *in limine*, we will review the ruling.

B. The case *sub judice* is distinguishable from *Luce* because (1) our review of the challenged evidence does not require the balancing of probative value against prejudicial effect; and (2) the record indicates defendant's intention to testify were it not for the ruling. While recognizing the concerns expressed by the Supreme Court in *Luce*, we find these two distinctions valid and important, and we also find strong policy favoring reviewability in this case.

1. The United States Supreme Court's paramount concern in *Luce* was that review would be impracticable without a fully developed record, including the defendant's testimony, because the reviewing court could not determine whether the probative value of the evidence outweighed its prejudicial effect. In the case

---

4. The district attorney stated "throughout the trial . . . I had been led to believe that the defendant was going to testify."

*sub judice*, defendant maintains the evidence of the other killings was inadmissible, and that Rule 608(b) of the North Carolina Rules of Evidence provides no solace to the State. That Rule provides in pertinent part that "specific instances of the conduct of a witness, for the purposes of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They *may*, however, in the discretion of the court, *if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness. . . ."* (Emphasis added.) The specific instances of conduct regarding defendant's alleged participation in three unrelated murders were not probative of defendant's character for truthfulness. We agree with defendant that the evidence was not admissible under Rule 608(b).

In *State v. Morgan*, 315 N.C. 626, 340 S.E. 2d 84 (1986), our Supreme Court noted that "Rule 608(b) represents a drastic departure from the former traditional North Carolina practice which allowed . . . cross-examin[ation] for impeachment purposes regarding *any* prior act of misconduct. . . ." 315 N.C. at 634, 340 S.E. 2d at 89 (emphasis in original), and that "evidence routinely disapproved as irrelevant to the question of a witness' [truthfulness] includes specific instances of conduct relating to . . . *violence against other persons.*" 315 N.C. at 635, 340 S.E. 2d at 90, quoting 3 D. Louisell & C. Mueller, Federal Evidence Sec. 305 (1979) (emphasis in original). The *Morgan* Court then held that the cross-examination in that case about the defendant's conduct, in twice assaulting people by pointing a gun at them, "was improper under Rule 608(b) because extrinsic instances of assaultive behavior, standing alone, are not in any way probative." Considering *Morgan* and the clear language of Rule 608(b) the evidence of defendant's alleged involvement in other murders was manifestly inadmissible.

Seeking to avoid the compelling force of *Morgan* and the distinguishing fact that *Luce* was based on Rule 609(b), not Rule 608(a) of the Federal Rules of Evidence, the State during oral argument contended that the evidence of the other alleged murders was admissible under Rule 404(b) to prove motive. This, the State maintained, makes the *Luce* decision an appropriate guidepost, because once the evidence is deemed admissible to prove

motive, the court must then decide whether its probative value outweighs its prejudicial effect. That was the same inquiry under Rule 609(b) in *Luce*. If the evidence concerning the other murders was admissible to show motive, then the State would be correct, and our decision would turn solely on whether we adopt *Luce* in this case. However, if the critical inquiry is instead whether the evidence is relevant, then this case is, as defendant argues, clearly distinguishable from *Luce*. We find, as more fully set forth in subsection C *infra*, that the challenged evidence was inadmissible under Rule 404(b) and that this case is distinguishable from *Luce* since no weighing of probative value and prejudicial effect was necessary.

2. Additionally, the record shows that defendant renewed her motion *in limine* just prior to closing her case. Her intent to testify, were it not for the ruling, seems clear.

Strong policy favors reviewability in such a case. The purpose in allowing a motion *in limine* is to permit a witness to testify without threat of use of inadmissible evidence. If the threatened use of inadmissible evidence can prevent the defendant from testifying altogether and also deny her the opportunity to appeal an erroneous ruling on the admissibility of the evidence, the State would have multiple illegitimate opportunities to silence defendants, and the very purpose of the motion *in limine* would be lost.

[5] C. The trial court committed prejudicial error in denying defendant's motion *in limine* because the evidence regarding defendant's alleged participation in other killings was not admissible to prove motive. Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It *may*, however, *be admissible for other purposes*, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." (Emphasis added.) These "other purposes" are not catchalls, but rather operate in specific factual contexts in which there is a special relationship between the past acts and the one for which the person is being tried. For example, other bad acts may be used to prove motive in a case in which the State alleged that defendant's motive for committing the crime for which he was tried was to

silence the victim because the victim knew about defendant's prior bad acts. Thus the evidence of defendant's prior bad acts would be admissible to show defendant's motive for committing the more recent crime. If we interpreted Rule 404(b) as the State suggests, use of other bad acts to show motive would be tantamount to using character evidence to prove propensity which is the very evil the Rule proscribes. There is not the slightest hint that the three allegedly professed killings provided a motive for killing David Lamb. Nor is there the slightest likelihood that the evidence was admissible for any of the other purposes listed in Rule 404(b).

The erroneous denial of defendant's motion *in limine* was prejudicial because much of the State's evidence hinged on the credibility of the various witnesses, many of whom had changed their accounts of the events before and after David Lamb's death. Almost all of the witnesses were related to the defendant and some of their testimony was based on conversations with the defendant. Certainly the defendant was prejudiced by being wrongfully discouraged from giving her side of the story.

We hold that the trial court erred in denying defendant's motion *in limine* to prevent the district attorney from using the inadmissible evidence to impeach defendant. Because of this disposition it is not necessary to discuss defendant's remaining assignment of error regarding jury instructions.

## VI

In summary we hold that the trial judge did not err in admonishing a witness out of the presence of the jury, but in the presence of other witnesses, that she could be subject to perjury and contempt of court because of her testimony, nor in denying defendant's motion to dismiss on grounds that her statutory and constitutional rights to a speedy trial were violated. However, we hold that the trial judge abused his discretion in denying defendant's motion *in limine* to exclude evidence implicating defendant in other killings. We therefore award defendant a new trial.

New trial.

Judges JOHNSON and PHILLIPS concur.