*379 KELLY, J.
(dissenting). I would not extend the ruling in Luce v United States[1] and People v Finley[1]
[2] to this case. I find that the trial court’s error here was plain enough to require reversal, despite defendant’s decision not to testify. Therefore, I would reverse the Court of Appeals decision and remand this case for a new trial.
THE MAJORITY MISCHARACTERIZES FINLEY
Finley does not stand for anything more than a specific application of Luce. It holds that, to preserve a claim of error concerning improper impeachment by prior convictions under MRE 609, a defendant must testify. Although Justices BOYLE and GRIFFIN joined Chief Justice RlLEY’s lead opinion, Justice BRICKLEY joined only part of it. Finley, supra at 526-531. He concurred with the adoption of the rule as defined in Luce. However, he disagreed with certain elements of the opinion. Finley, supra at 526. One of his specific concerns was that it used overly broad language in obiter dictum. Id. at 530. He wrote that the lead opinion had no authority for its statement that
“the straightforward logic of Luce ... is that as to eviden-tiary rulings, error does not occur until error occurs; that is, until the evidence is admitted. Obviously, in other contexts, if an offer of proof is made and the court erroneously permits the introduction of hearsay, character evidence, similar acts, or the myriad of evidence objectionable under the MRE, there is no error requiring reversal unless the evidence actually is introduced.” [Id., quoting lead opinion at 512.]
*380 He also noted that “the notion that reviewable error does not occur until admission of the challenged evidence does not square with actual practice.” Id. at 531.
Interlocutory appeals are regularly taken on evidentiary questions and pretrial rulings are often deemed erroneous in spite of the fact that their effect has not yet been felt at trial. [Id.]
He cautioned that “[e]rror can also occur at trial in varying forms, and the Court should not be so quick to define a universal principle, particularly since the specific grounds for the adoption of the Luce requirement are so clearly explained by the Chief Justice.” Id.
Thus, although Justice BRICKLEY supported the adoption of Luce, he agreed to only a limited adoption of its principle. He left no doubt that he would not apply Finley beyond its specific grounds.
Justice CAVANAGH concurred in the result, but dissented from the rationale of the lead opinion with one exception noted below. Id. at 531-544. Justices LEVIN and ARCHER concurred in Justice BRICKLEY’s opinion, “except for the language of his opinion concurring in the language of the plurality opinion that fails to recognize that a defendant who wishes to preserve for appeal an adverse ruling on the admission of a prior conviction record may do so by testifying outside the presence of the jury.” Id. at 557-558 (LEVIN, J.).
Therefore, the majority in this case incorrectly cites the Finley lead opinion for the proposition that “ ‘error does not occur until. . . the evidence is admitted.’ ” Ante at 370 quoting id., p 512 (RILEY, C.J.). Finley does not hold that if an offer of proof is made and the evidence is erroneously deemed admissible, there is no error requiring reversal unless the evidence is actually introduced. Ante at 370.
*381 Contrary to the majority’s citation here, four Finley justices rejected the lead opinion’s sweeping premise. See id. at 530-531 (BRICKLEY, J.); 537-538 (CAVANAGH, J.); 557-558 (LEVIN, J.). The “majority” of the Finley Court was composed of only three justices who in obiter dictum saw an application of Luce beyond MRE 609. Hence, the rationale in the lead opinion in Finley giving an expanded view of Luce is erroneously based.
LUCE AND FINLEY ARE INAPPLICABLE
Defendant seeks review of an incorrect ruling involving his right to remain silent after receiving Miranda warnings. Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). The majority “extends” the holding of Luce to this case. This extension ignores language in both Luce and Finley specifically limiting their holdings to cases involving a subtle evidentiary balancing test of nonconstitutional dimensions concerning impeachment with prior convictions. Luce, 469 US 43; Finley, 431 Mich 514 (RILEY, C.J.), 553-554 (Levin, J.).
Indeed, Chief Justice Burger’s opinion for the Court in Luce carefully distinguished Luce from Brooks v Tennessee and New Jersey v Portash. Brooks v Tennessee, 406 US 605; 92 S Ct 1891; 32 L Ed 2d 358 (1972); New Jersey v Portash, 440 US 450; 99 S Ct 1292; 59 L Ed 2d 501 (1979). Brooks and Portash involved “Fifth Amendment challenges to state court rulings that operated to dissuade defendants from testifying.” Justice Burger wrote that they did not involve “a federal court’s preliminary ruling on a question that did not reach constitutional dimensions, such as a decision under [FRE 609(a)].” Luce, 469 US 42-43.
*382 The Luce Court was primarily concerned about the practical problem of trial courts being forced to make FRE 609 evidentiary rulings in a factual vacuum:
A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant’s testimony, which is unknowable when, as here, the defendant does not testify. [Luce, 469 US 41.]
I agree with the dissent in Finley that the above rationale from Luce is unpersuasive even in the limited context of a ruling in limine on an FRE 609 motion. Finley, 431 Mich 537 (CAVANAGH, J.). In any event, the review of prior conviction evidence under FRE 609(a) involves both a nonconstitutional question and a subtle balancing test. The test is heavily dependent on the precise scope of the defendant’s testimony. However, the claimed error in this case involves solely a legal question and is one of constitutional dimensions.
The majority presents case law from federal circuit courts of appeals that have expanded Luce to claims other than those involving FRE 609 determinations. Included are opinions from two jurisdictions that have extended the Luce rule to questions involving constitutional claims of error. However, the majority places too much reliance on the warm reception of these courts to the unwarranted expansion of Luce by federal circuit courts. “It is only understandable that our extremely overworked judges will display a natural fondness for any strict preservation of error rule, which necessarily lightens the often crushing case load of both trial and appeals court judges.” Duane, Appellate review of in limine rulings, 182 FRD 666, 682 (1999).
*383 Various federal and state court opinions have recognized the inapplicability of Luce to Fifth Amendment and Sixth Amendment violations, as well as other similar questions of constitutional error.[3] I find these opinions persuasive.
There are a number of important reasons for the differentiation they recognize. First, as aptly noted by Justice CAVANAGH in Finley, Luce's requirement that a defendant testify to preserve the impeachment issue was “inconsistent with the spirit, if not the precise holding,” of two of the United States Supreme Court’s own decisions, Brooks and Potash. Both specifically dealt with questions of Fifth Amendment challenges to state court rulings. Finley, 431 Mich 535-536 (CA-VANAGH, J.). Justice Brennan in his Luce concurrence specifically recognized the factual differences of such a *384 claim. He noted, also, that a different “calculus of interests” sets the types of claims of error apart from one another. Luce, 469 US 44 (Brennan, J., concurring).
I agree with Justice Brennan that a different “calculus of interests” is present when the alleged claim of error is a constitutional one. I find that, even more than in a review of an FRE 609 ruling, the calculus of interests involved where the alleged error is constitutional in nature requires appellate court review. This is true even if the defendant does not testify at trial and the evidence is not provided to the jury. As Justice CAVANAGH so eloquently stated in his dissent in Finley.
Let us start with the language of the Fifth Amendment itself, which states in part:
“No person ... shall be compelled in any criminal case to be a witness against himself....” [US Const, Am V]
Implicit in this constitutional guarantee is that no penalty, no sanction, no disadvantage to the defendant shall flow from his decision not to testify at trial.
Griffin v California, 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965), reh den 381 US 957 (1965), held unconstitutional a statute permitting the prosecution to comment on the failure of the defendant to testify at his criminal trial. Carter v Kentucky, 450 US 288; 101 S Ct 1112; 67 L Ed 2d 241 (1981), held that the Fifth Amendment required the court, upon the request of a nontestifying defendant, to instruct the jury not to draw an adverse inference from the failure of the defendant to testify. The central theme of both cases was “that a defendant must pay no court-imposed price for the exercise of his constitutional privilege not to testify.” 450 US 301. (Emphasis added.)
Similarly, the Court in Lefkowitz v Cunningham, 431 US 801, 805; 97 S Ct 2132; 53 L Ed 2d 1 (1977), observed:
“[Our] cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.”
*385 The Luce rule exacts a heavy price from the defendant for electing not to testify at his trial. He is denied the right on appeal to raise what may be a substantial issue. [Finley, 431 Mich 533-534 (CAVANAGH, J.).]
Here, the majority’s decision exacts an even heavier price on defendant’s decision not to testify at trial. An accused in the position of the defendant in Finley must testify or give up the right to raise a substantial issue. In this case, however, the claim of error surrendered is a constitutional one, not simply an evidentiary one.
LUCE DID NOT INVOKE CONSTITUTIONAL QUESTIONS
In an attempt to justify why retroactive application is unwarranted in this case, the majority chooses to find constitutional implications present in Luce and Finley. However, both the majority and the concurrence in Luce and the lead opinion in Finley took pains to distinguish Rule 609 questions from those involving constitutional claims of error. In direct response to Justice CAVANAGH’s dissent in Finley, the lead opinion stated:
[D]espite the suggestions in Justice CAVANAGH’s opinion, it cannot be seriously claimed that the Fifth Amendment bars adoption of Luce. Whatever one’s views of the philosophy of particular justices, in Luce, all eight justices agreed that the issue did not involve a Fifth Amendment challenge. The issue presented is what procedural steps are necessary to preserve an issue for appeal, a matter that no more levies a “court-imposed price” for the exercise of a constitutional privilege than procedural rules requiring the timely assertion of other constitutional rights. [Finley, 431 Mich 520 (Riley, J.).]
The majority’s recognition that “[a] defendant’s right to testify in his own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution”, ante at 373, arises from its reading *386 of Rock v Arkansas, 483 US 44, 46-47; 107 S Ct 2704; 97 L Ed 2d 37 (1987). However, Rock was not published until after Luce had been decided and was not mentioned in Finley, which was released soon after Rock. As noted by Professor Duane, there is no indication that the defendant in Luce raised, or that the Luce Court saw itself as deciding, any constitutional claim whatsoever. At the time Luce was decided:
Chief Justice Burger and a majority of the Court still regarded it as an open question whether a criminal accused had a constitutional right to testify in his own trial. Two years after Luce, Chief Justice Burger wrote for the majority in Nix v Whiteside that “this Court has never explicitly held that a criminal defendant has a due process right to testify in his own behalf. .. .” [Nix v Whiteside, 475 US 157, 164; 106 S Ct 988; 89 L Ed 2d 123 (1986)]. This comment provoked a response by a minority of four justices who were “puzzled by the Court’s implicit suggestion that whether a defendant has a constitutional right to testify in his own defense remains an open question.” [Id. at 186 n 5 (Blackmun, J., concurring).]
Since the time Burger wrote for the Court in Luce and Nix, however, the Supreme Court has formally settled that an accused has a constitutional right to testify at his trial [e.g., Rock, supra at 49-51]. That being the case, there is now a plausible basis for a criminal appellant to claim—unlike the appellant in Luce—that an erroneous ruling to allow impeachment amounted to an impermissible burden on the exercise of his constitutional rights. [Duane, supra at 686.]
Professor Duane used this observation to show why Luce was out of step with previous Supreme Court decisions. He theorized that this was the reason that the Supreme Court apparently has been highly reluctant to give Luce any precedential value in the years since it was issued. Also, he believes that the Supreme Court would not rule as it did in Luce were it again presented with the same issue.
*387 THE MAJORITY’S RELIANCE ON OHLER IS MISPLACED
The majority reads too much into the decision in Ohler v United States, 529 US 753; 120 S Ct 1851; 146 L Ed 2d 826 (2000). There, the defendant was confronted with the potential introduction of evidence of a prior conviction. The defendant sought in limine to preclude the evidence under FRE 609, and the trial court denied the motion. The defendant then elected to testify and explain the earlier conviction before he could be impeached with it. After being convicted, he asserted on appeal that the trial court’s ruling infringed his right to testify. The United States Supreme Court, in a five-to-four decision, affirmed the conviction.
The majority, in an opinion by Chief Justice Rehnquist, found that the defendant “runs into the position taken by the Court in a similar, but not identical, situation in Luce” that any possible harm from the decision whether to testify is wholly speculative. Ohler, 529 US 759. This is the only mention of Luce in the majority opinion. The Court’s holding was based primarily on a waiver analysis: “We conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error.” Id. at 760.
The dissent, authored by Justice Souter, disagreed with the waiver analysis. It discussed Luce in three paragraphs. The majority here has quoted the second paragraph, yet conveniently omitted the first and third. The relevant text, id. at 760-761, is as follows:
The only case of this Court that the majority claims as even tangential support for its waiver rule is Luce v United States, 469 US 38; 105 S Ct 460; 83 L Ed 2d 443 (1984). Ante at [759]. We held there that a criminal defendant who remained off the stand could not appeal an in limine ruling to admit prior convictions as impeachment evidence under *388 Federal Rule of Evidence 609(a). Since the defendant had not testified, he had never suffered the impeachment, and the question was whether he should be allowed to appeal the in limine ruling anyway, on the rationale that the threatened impeachment had discouraged the exercise of his right to defend by his own testimony. The answer turned on the practical realities of appellate review.
An appellate court can neither determine why a defendant refused to testify, nor compare the actual trial with the one that would have occurred if the accused had taken the stand. With unavoidable uncertainty about whether and how much the in limine ruling harmed the defendant, and whether it affected the trial at all, a rule allowing a silent defendant to appeal would require courts either to attempt wholly speculative harmless-error analysis, or to grant new trials to some defendants who were not harmed by the ruling, and to some who never even intended to testify. In requiring testimony and actual impeachment before a defendant could appeal an in limine ruling to admit prior convictions, therefore, Luce did not derive a waiver rule from some general notion of fairness; it merely acknowledged the incapacity of an appellate court to assess the significance of the ruling for a defendant who remains silent.
This case is different, there being a factual record on which Ohler’s claim can be reviewed. She testified, and there is no question that the in limine ruling controlled her counsel’s decision to enquire about the earlier conviction; defense lawyers do not set out to impeach their own witnesses, much less their clients. Since analysis for harmless error is made no more difficult by the fact that the convictions came out on direct examination, not cross-examination, the case raises none of the practical difficulties on which Luce turned, and Luce does not dictate today’s result.[1]
*389 Court of Appeals would then have had a complete record detailing the nature of petitioner’s testimony, the scope of the cross-examination, and the possible impact of impeachment on the jury’s verdict.” 469 US at 41. There are, of course, practical issues that may arise in these cases; for example, the trial court may feel unahle to render a final and definitive in limine ruling. The majority does not focus on these potential difficulties, and neither do I, though some lower courts have addressed them. See, e.g., Wilson v Williams, 182 F.3d 562 (CA 7, 1999) (en banc). For the purposes of this case, we need consider only the circumstance in which a district court makes a ruling that is plainly final.
It is manifest that the majority’s reliance on Ohler in the instant case is misplaced. The United States Supreme Court only begrudgingly cited Luce in Ohler. Additionally, Ohler is the only United States Supreme Court decision to even mention Luce in passing. Finally, Ohler and Luce, unlike the instant case, involved alleged error stemming from the introduction of prior conviction evidence under FRE 609. For all practical matters, Ohler is yet another decision indicating that Luce should be confined to prior conviction evidence and should not be extended to claims of constitutional error.
THE HOLDING IN LUCE SHOULD NOT BE EXTENDED
The majority has found no case law holding that Luce involved a constitutional claim of error. I have discovered none. Most certainly, the lead opinion in Finley did not do so.
In my view, the majority’s acknowledgment today of the implication of an FRE 609 ruling on a defendant’s Fifth Amendment right to testify proves the correctness of Justice CAVANAGH’s position in Finley. Such an ac *390 knowledgment also strengthens, rather than detracts from, the arguments against extending Finley to claims outside its narrow holding.
Even if Luce can be read to distinguish evidentiary “questions not reaching constitutional dimensions” from claims of error that involve direct constitutional error, the Luce holding presents little support for expansion beyond its borders. The trial court’s decision in this case fully implicates both a defendant’s Fifth Amendment right to testify and his Fifth Amendment right to remain silent in the face of post -Miranda accusations. These rights come into play even when the trial court’s ruling restricts the admission of evidence of a prior conviction to rebuttal, in contrast to the trial court’s more expansive ruling here.
The magnitude of the choice that the ruling places on the defendant far outweighs that to be made under an FRE or MRE 609 ruling. In a rule 609 question, the defendant must choose between testifying and not testifying. If he does not testify, he relinquishes his opportunity to present his account of the incident. If he does testify, the prosecution may use improperly admitted prior convictions to impeach his credibility.
In this case, by contrast, if the defendant chooses not to testify, he will forgo the opportunity to present his account of the incident and lose all chance to appeal. If he testifies, he risks being impeached with improperly admitted substantive statements that the jury is certain to use as evidence of his guilt of the instant offense.
The risk that this damaging impeachment evidence will destroy defendant’s credibility in the jury’s eyes produces a chilling effect on defendant’s exercise of the right to testify. That risk acts as an impermissible “penalty imposed by courts for exercising a constitutional privilege.” Griffin, 380 US 614. In essence, the *391 majority’s holding here requires the defendant to choose which constitutional right to give up, his Fifth Amendment right to post -Miranda silence or his Fifth Amendment right not to testify.[4]
Even if one believes that Luce gave due deference to the chilling effect on a defendant’s right to testify, the instant case brings into sharp focus the observation by Justice Brennan: the “calculus of interests” may be much different in a matter involving a simple eviden-tiary ruling than in one involving a claimed error of constitutional magnitude.
NO WEIGHING OF EVIDENCE IS APPROPRIATE
As noted by Justice Brennan,[5] concerns about ruling in a factual vacuum are not present to the same extent when the court’s ruling turns on legal, rather than factual, considerations. See, e.g., United States ex rel Adkins v Greer, 791 F2d 590, 594 (CA 7, 1986). The majority implies that the question presented here involves a factual, rather than legal, question. It is incorrect.
The prosecution’s threatened use as a confession of defendant’s post -Miranda affirmative assertion of his right to remain silent would violate the Constitution in all but extremely limited circumstances. Doyle v Ohio, 426 US 610, 619 n 11; 96 S Ct 2240; 49 L Ed 2d 91 *392 (1976). It is important to realize that the exception in Doyle is not as broad as the majority’s quotation implies. Postarrest silence can be used to contradict a defendant who testifies that he made an exculpatory statement to the police. It cannot be used to impeach the substance of a defendant’s testimony. Doyle, 426 US 619 n 11. See also People v Dennis, 464 Mich 567, 573 n 5; 628 NW2d 502 (2001).
As recognized in People v Bobo,[6] the only use of post -Miranda silence is to contradict a specific assertion that a defendant provided a statement to the police. Id. at 359. Any remaining validity for the rationale of Luce and later evidentiary decisions examining evidentiary rulings, such as those involving MRE 403 and MRE 404(b), does not apply here.
The Luce Court opined that a reviewing court’s weighing of the probative value and prejudicial effect of a prior conviction under Rule 609 depends on the nature of the defendant’s testimony. No such weighing was necessary in this case. At the time of the ruling in limine, the trial court was not required to determine the extent of defendant’s actual testimony. It was required merely to conclude that the invocation of silence could not be used as substantive evidence in the prosecution’s case-in-chief or to rebut the substance of defendant’s testimony.
Moreover, the trial court should have held that defendant’s statement was admissible only if defendant took the stand and asserted that he made an exculpatory statement to the police when arrested. Appellate review does not depend on knowledge of the exact extent of defendant’s later trial testimony or a weighing of factors such as those present in a Rule 609 analysis.
*393 DEFENDANT’S CLAIM OF ERROR IS NOT SPECULATIVE
Nor do I agree with the majority’s determination that defendant’s claim of error is “speculative” because defendant did not testify and his earlier statement was not given to the jury. That determination ignores the plain error present in this case. It disregards the chilling effect on defendant’s decision not to testify and the important distinction Michigan recognizes between reviewing constitutional error and nonconstitutional evidentiary error.
The majority’s assertion that “it is impossible to determine whether the trial court’s ruling was erroneous,”[7] overlooks the content of the ruling that it is reviewing. The majority places much emphasis on the fact that the admissibility of a defendant’s post-Miranda silence depends on the context in which the prosecutor sought to admit it. Ante at 375-376. The context here, judging from the substance of the prosecutor’s arguments and the trial court’s actual ruling, confirms that the trial court admitted the statement for any and all purposes. The ruling was based on an entirely flawed view of the scope of the Fifth Amendment. It was premised on the erroneous conclusion that the challenged statement was not protected by the Fifth Amendment:
[Defendant] agrees that he’s going to give a statement and he starts. The law says that you can’t stop in the middle and say, well, now I want to assert my Fifth Amendment rights. You don’t have any further Fifth Amendment rights once you start to give a statement. You can’t say what you want said and not say anything else.
As previously recognized by our Court, in a situation where “a defendant answered several questions and *394 then invoked his right to remain silent, Doyle, supra at 618-619, would prevent the prosecutor from commenting on this silence.” People v McReavy, 436 Mich 197, 219 n 23; 462 NW2d 1 (1990). See also 218-219. Such silence includes “not only ‘muteness; [but] includes the statement of [the defendant’s] desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted,’ ” Id., 218 n 21, citing Wainwright v Greenfield, 474 US 284, 295 n 13; 106 S Ct 634; 88 L Ed 2d 623 (1986).
Despite this basic principle, the trial court here did not limit in any way the use of defendant’s statement. It did not recognize the specific limitations in Doyle v Ohio,[8] or this Court’s majority opinion in People v Dennis, 464 Mich 567, 573 n 5; 628 NW2d 508 (2001). In Dennis, the erroneously admitted evidence involved inadvertently elicited trial testimony about the defendant’s refusal to submit to a police interview. Id. at 578. This Court recognized the error in the introduction of the evidence, but found the evidence harmless. It relied in large part on the fact that, because the trial court specifically found error in the admission, it gave a “forceful curative instruction” to the jury that the evidence “ ‘cannot be used by you in any way and is not an indication of anything.’ ” Id.
The trial court’s ruling here placed no restriction on the prosecution’s use of the statement, either during direct testimony or in rebuttal. The court found simply that the Fifth Amendment did not apply at all. Not only was the trial court’s ruling erroneous, the error was plain. The problems of “ruling in a vacuum” are simply not applicable here.
*395 THE ERROR IS NOT HARMLESS
The majority’s analysis of the error also fails to note that the trial court’s ruling was clearly erroneous. Moreover, it fails to recognize the important distinction between the error in Luce and the error in the instant case. The ruling in Luce, upon which the defendant’s claim of error was predicated, involved a nonconstitu-tional evidentiary issue.
In Michigan today, it is the defendant who bears the burden of demonstrating that a nonconstitutional error harmed him by causing him not to testify. People v Lukity, 460 Mich 484, 495-496; 596 NW2d 607 (1999). If, instead, the error were a preserved constitutional one, the burden would be on the prosecution to “ ‘prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.’ ” People v Anderson (After Remand), 446 Mich 392, 406 n 36; 521 NW2d 538 (1994), quoting Chapman v California, 386 US 18, 23; 87 S Ct 824; 17 L Ed 2d 705 (1967).
Thus, concerns about the “speculative” effect of an erroneous FRE or MRE 609 ruling on a defendant’s decision not to testify are not present in the instant case. The effect is presumed to be prejudicial. Indeed, given the clear error in the trial court’s broad ruling of admissibility, I question the truth of the majority’s assertion that it cannot determine whether the ruling was erroneous. In addition, I would find that the prosecution’s choice not to elicit defendant’s statement on direct examination did not remove from the flawed ruling its chilling effect.
The majority’s assertion that the evidence “might not have been admitted at all” even if defendant had testified[9] ignores the realities of the trial court’s mis *396 understanding about the limited admissibility of the statement. Statements made at the hearing in limine demonstrate that the prosecution intended to introduce defendant’s statement if he testified about having provided an exculpatory statement to the police. However, even if he had not, the prosecution would have introduced the statement to rebut other parts of his testimony. The trial court’s ruling made clear that it would have admitted the statement for an improper purpose, because the court was under the mistaken impression that the Fifth Amendment did not apply.
At the time of the decision to testify, defendant was faced with an erroneous ruling involving substantive evidence of guilt. Unlike the majority, I would not expect defendant to forecast that the court would have a revelation about the impropriety of its ruling, especially because it immediately predated the trial. Nothing in the record suggests that such a revelation would occur and, given the rationale used by the trial court in making the ruling, I find such a result highly unlikely. Whatever validity that argument may have in different circumstances, it is inapplicable here.
THE CHALLENGE IN LIMINE WAS APPROPRIATE
Nor do I find persuasive the majority’s assertion that a reversal based on the admission of evidence contested in limine, but never introduced at trial, will invite abuse. This argument fails to recognize that appellate courts will review claims of error, even when they are not preserved at all. People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999). Moreover it has little merit in the setting where claims of constitutional error are raised, and none in the instant case.
A defendant does not abuse the system by seeking before trial to suppress evidence obtained in violation of *397 his constitutional rights and directly bearing on the analysis of guilt. To the contrary, as this Court has noted, a contemporaneous objection provides the trial court “ ‘an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant’s constitutional and nonconstitutional rights.’ ” Carines, supra at 764-765 (citations omitted). As recognized by a majority of the justices in Finley, preliminary evidentiary rulings are valid, important, and logical ways to review questions of evidentiary error. Finley, supra at 531 (BRICKLEY, J.), at 537 (CA-VANAGH, J.), and at 557-558 (Levin, J.).
CONCLUSION
The error in this case was preserved by timely objection. Also, the trial court’s specific ruling on the motion in limine was erroneous. Therefore, defendant’s conviction must be reversed unless the prosecution can prove beyond a reasonable doubt that the error did not contribute to the verdict. Anderson (After Remand), supra. The prosecution has failed to do this.
The conviction in this case was dependent almost entirely on the testimony of the twelve-year-old complainant, about whose honesty the jury obviously had doubts. Had defendant testified, the case would have been a credibility contest. But, because of the trial court’s erroneous ruling, defendant did not testify. Hence, the verdict was influenced by the trial court’s error. The prosecution has not shown that the evidence at trial so overwhelmingly proved defendant’s guilt that his testimony would not have made a difference.
Therefore, the trial court erred and the prosecution cannot show that the error was harmless beyond a reasonable doubt. I would reverse defendant’s convic *398 tion and remand this case for a new trial. Because of this conclusion, I need not review defendant’s additional claim that the trial court improperly exceeded the sentencing guidelines for his conviction. However, I note that the sentence seems to have been influenced by the trial court’s view that defendant committed first-degree criminal sexual conduct, notwithstanding his acquittal of that charge. The issue is hardly frivolous, yet the majority makes no mention of it, merely alluding to the lower court’s decisions to justify not reaching the matter.
Cavanagh, J., concurred with Kelly, J.

 Luce v United States, 469 US 38; 105 S Ct 460; 83 L Ed 2d 443 (1984).

 People v Finley, 431 Mich 506; 431 NW2d 19 (1988).

 See, e.g., United States ex rel Adkins v Greer, 791 F2d 590, 593-594 (CA 7, 1986) (a confession elicited in violation of the defendant’s Fifth Amendment rights can he reviewed despite the defendant’s election not to testify); United States v Chischilly, 30 F3d 1144, 1150-1151 (CA 9, 1994) (a defendant was permitted to challenge the admissibility of a confession, despite the fact that it was not introduced, because the trial court’s ruling that the confession could be used prevented the defendant from raising an insanity defense); Biller v Lopes, 834 F2d 41, 43-45 (CA 2, 1987) (a habeas corpus petitioner was permitted to raise a claim that the denial of a motion in limine unfairly kept him from testifying, when the motion was based on the unconstitutionality of a prior conviction); United States v Jenkins, 785 F2d 1387 (CA 9,1986) (the use of grand jury testimony for impeachment was moot because the government did not introduce it at trial); Pillotti v Superintendent, 759 F Supp 1031 (SD NY, 1991) (a challenge to impeachment evidence obtained with a fraudulently obtained guilty plea in a prior case). See also State v Greve, 67 Wash App 166; 834 P2d 656 (1992); State v Brings Plenty, 459 NW2d 390 (SD, 1990); State v Brunelle 148 Vt 347; 534 A2d 198 (1987); People v Henderson, 745 P2d 265 (Colo App, 1987); State v Lamb, 84 NC App 569, 580-581; 353 SE2d 857 (1983); People v Brown, 42 Cal App 4th 461; 49 Cal Rptr 2d 652 (1996). Interestingly, the court in United States v Wilson, 307 F3d 596 (CA 7,2002), failed to address the precedent of its own circuit in reaching its decision.

 The Luce Court anticipated as much: “It is clear, of course, that had petitioner testified and been impeached by evidence of a prior conviction, the District Court’s decision to admit the impeachment evidence would have been reviewable on appeal along with any other claims of error. The

 The majority calls this statement “misleading.” When attempting to substantiate its dismissive characterization of the statement, it ignores the fact that defendant in this case was confronted with an erroneous trial court ruling. It ignores, in addition, that no facts suggest that, had he taken the stand, defendant would have claimed to have made an exculpatory statement to the police. Hence, the impeachment he faced would have had to be improper and, contrary to the majority’s reasoning, defendant could not properly have been impeached with his post-Miranda silence.

 Luce, 469 US 43-44 (Brennan, J.).

 People v Bobo, 390 Mich 355; 212 NW2d 190 (1973).

 Ante at 378.

 Supra at 619 n 11.

 Ante at 376.